UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| GRETCHEN LEWIS, et al., | ) |
| Plaintiffs | ) ) ) ) |
| v. | ) 2:22-cv-00054-NT |
| SPURWINK SERVICES, INC., | ) ) ) ) |
| Defendant | ) |

**ORDER ON MOTION FOR SANCTIONS**

Defendant asks the Court to impose sanctions upon Plaintiffs for alleged discovery violations related to the expert witnesses designated by Plaintiffs. More specifically, Defendant seeks to exclude or limit expert testimony and the reimbursement of certain attorney fees and costs. (Motion for Sanctions, ECF No. 43.) Following a review of the record and after consideration of the parties' arguments, the Court grants in part and denies in part Defendant's motion.

**BACKGROUND**

Plaintiffs are the parents and legal guardians of their adult son, Sean Lewis, who has multiple physical and cognitive disabilities. Plaintiffs allege that while Sean was enrolled in one of Defendant's residential programs, Defendant failed to provide appropriate care for Sean.

Plaintiffs designated Kieran Kammerer, M.D., and John Kelty, Ph.D., a clinical psychologist, as expert witnesses. As the result of Defendant's objections to the adequacy of Plaintiffs' designations and following conferences with the Court, Plaintiffs amended

their designations on multiple occasions to address Defendant's concerns that Plaintiffs' designations failed to identify the bases and reasons for the experts' opinions. Defendant then conducted the depositions of the experts.[1]

During questioning at Dr. Kammerer's videoconference deposition, Plaintiffs' counsel observed Dr. Kammerer look down at something offscreen before responding to a question regarding the information he reviewed in connection with one of his opinions. (Dep. of Dr. Kammerer at 73-74, ECF No. 43-2.) Dr. Kammerer acknowledged that he looked at a notepad with a note from counsel. (*Id.*) When asked to produce the document that the witness evidently viewed, Plaintiffs' counsel declined. When Defendant's counsel asked Dr. Kammerer to read the note, Plaintiffs' counsel instructed the witness not to do so. (*Id*. at 74-75.) Approximately one month following the deposition, Plaintiffs' counsel produced the document. The document consists of notes written by Plaintiffs' counsel during the deposition and a written "arrow" directed to a specific portion of the notes. (Exhibit E to Defendant's Motion for Sanctions at 20, ECF No. 43-5.) Plaintiffs' counsel wrote in a letter to Defendant's counsel that he had drawn an arrow on his legal pad and further stated: "I did not provide information to form the basis of an answer to your question about what documents he had reviewed prior to testifying. I was simply directing his attention to his prior answer to your question about what documents he had reviewed prior

---

[1] Defendant deposed Dr. Kammerer over the course of two days (December 4, 2023, and December 7, 2023), and deposed Dr. Kelty on December 22, 2023.

to testifying.  In hindsight, I can appreciate both that you were surprised and frustrated by this incident.  I apologize." (*Id*. at 1.)

At his deposition, Dr. Kelty testified that he made some notes during his assessment of the matter. When Defendant's counsel asked Dr. Kelty to provide a copy of the notes, Plaintiffs' counsel instructed Dr. Kelty not to forward the notes.  (Dep. of Dr. Kelty at 135-138, ECF No. 43-3.)  Plaintiffs' counsel suggested that he would produce at least some of the requested documents after the deposition. Approximately two weeks after the deposition, Plaintiffs' counsel sent Dr. Kelty's notes to Defendant's counsel.  During the deposition, Plaintiffs' counsel, citing the work product privilege, also advised Dr. Kelty not to answer questions regarding the information counsel shared with Dr. Kelty regarding the deposition testimony of another witness, Dara Oja, a nurse who evidently provided some services to Sean.  (Dep. of Dr. Kelty at 58-59, ECF No. 43-3.)

## DISCUSSION

Defendant asks the Court to exclude or limit the testimony of Drs. Kammerer and Kelty based on Plaintiffs' alleged failure to comply with the discovery requirements of Federal Rules of Civil Procedure 26 and 30.  Defendant also seeks the attorney fees and costs incurred in its efforts to learn the experts' opinions and the bases of the opinions and its fees and costs in the prosecution of this motion.  Plaintiffs contend the expert witness designations were adequate and the record does not support Defendant's request for sanctions.

**A.     Expert Witness Designations**

"A party seeking to introduce expert testimony at trial must disclose to the opposing party a written report that includes 'a complete statement of all opinions the witness will express and the basis and reasons for them.'" *Gay v. Stonebridge Life Ins. Co.*, 660 F.3d 58, 62 (1st Cir. 2011) (quoting Fed. R. Civ. P. 26(a)(2)(B)). "The purpose of the expert disclosure rules is to facilitate a fair contest with the basic issues and facts disclosed to the fullest practical extent." *Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004) (citation and internal quotes omitted). The court may impose sanctions under Rule 37(c)(1), including precluding the non-complying party from "using that witness or relevant expert information to supply evidence . . . at trial." *Gay*, 660 F.3d at 62. "Thus Rules 26(a) and 37(c)(1) seek to prevent the unfair tactical advantage that can be gained by failing to unveil an expert in a timely fashion." *Poulis-Minott*, 388 F.3d at 358.

As was apparent during the parties' discovery conferences with the Court, the adequacy of an expert witness designation before the expert's opinion is offered at trial or as part of a motion practice is often difficult to assess. A challenge to the adequacy of a designation typically arises when a party offers an expert opinion either at trial or in connection with a dispositive motion and the opposing party contends the designation did not fairly inform the party of the opinion or the bases for the opinion. Most expert witness designations include a summary of the opinion or opinions and at least a minimal explanation of reasons the expert maintains the opinion. Plaintiffs' designations were consistent with that approach.

4

Here, the Court could not at the time of the conferences and cannot now find that on their face, Plaintiffs' designations were or are inadequate. Plaintiffs summarized each expert's anticipated opinions and the grounds for the opinions. Plaintiffs' designations do not preclude the designated experts from testifying to the identified opinions as clarified or explained during the experts' depositions. Whether the opinions Plaintiffs attempt to present at trial or in connection with a dispositive motion are in accord with the identified opinions as explained during the depositions would be decided by the Court at the time of the proffer, if challenged by Defendant.

**B.      Conduct During Deposition**

Defendant argues that counsel unreasonably and inappropriately directed the expert witnesses not to provide certain information during their depositions and, therefore, interfered with Plaintiffs' ability to question the experts.

**1.      Communication with Dr. Kammerer**

When Defendant's counsel asked Dr. Kammerer about the information he reviewed in forming one of his opinions, through use of a written "arrow," Plaintiffs' counsel directed Dr. Kammerer's attention to a portion of the notes counsel was making during the deposition. The arrow pointed to the note "opinion based on med records his Spurwink MMC etc." (Exhibit E to Defendant's Motion for Sanctions at 20, ECF No. 43-5.)

"It is well settled that it is inappropriate for an attorney to influence or coach a witness during a deposition." *Musto v. Transport Workers Union of America, AFL-CIO*, No. 03-CV-2325 (DGT)(RML), 2009 WL 116960, at *1 (E.D. N.Y. Jan. 16, 2009) (citing *Calzaturficio S.C.A.R.P.A. s.p.a. v Fabiano Shoe Co., Inc.*, 201 F.R.D. 33, 40 (D. Mass.

2001)). In this case, the transcript of the deposition testimony and counsel's explanation ("I was simply directing his attention to his prior answer to your question about what documents he had reviewed prior to testifying") demonstrate that counsel attempted to influence or direct the testimony of the witness as he was testifying.

Plaintiffs argue that in "context," counsel's interaction with the witness did not delay or interfere with the deposition. (Plaintiffs' Response to Motion for Sanctions at 14, ECF No. 53.) While the nature and substance of the information communicated by counsel might inform the consequence of the conduct, any attempt by counsel to influence the substance of a witness's testimony while the witness is testifying during a deposition is unacceptable. Such conduct risks "undermin[ing] the truth-seeking purpose of discovery." *Barksdale School Portraits, LLC v. Williams*, 339 F.R.D. 341, 345 (D. Mass. Aug. 31, 2021) (imposing sanctions where counsel repeatedly "surreptitiously fed answers" to a deponent).

### 2. Dr. Kelty's Notes

The record suggests the disputed documents referenced in Dr. Kelty's deposition include the notes that Dr. Kelty took during his review of the matter and possibly other items. For instance, Plaintiffs' counsel references some correspondence or other documents that might be within the work product privilege. The work product privilege, however, would not protect from discovery the notes taken by a retained testifying expert witness while reviewing the materials from which the witness developed an expert opinion. Plaintiffs' counsel's stated willingness to produce the documents after the deposition

suggests that in the moment, counsel suspected or believed that at least some of the documents were discoverable.

### 3. Communication Regarding Nurse Oja's Testimony

Citing the work product privilege, Plaintiffs' counsel directed Dr. Kelty not to disclose the substance of counsel's discussion with him regarding Nurse Oja's deposition testimony. The work and communications of expert witnesses are not categorically covered by the work product privilege. *See* Fed. R. Civ. P. 26(b)(4); *In re Application of Republic of Ecuador v. Douglas*, 153 F. Supp. 3d 484, 490 (D. Mass. 2015). For expert witnesses expected to give testimony to the factfinder, draft reports are protected from disclosure, Fed. R. Civ. P. 26(b)(4)(B), as are communications between the attorney and the expert, with the exceptions of communications related to compensation and the facts and assumptions underlying expert opinions. Fed. R. Civ. P. 26(b)(4)(C). A review of the record reveals that the information counsel shared regarding Nurse Oja's testimony was not "considered" or "relied on" by Dr. Kelty. Fed. R. Civ. P. 26(b)(4)(ii)(iii). Dr. Kelty's testimony reveals that he considered and relied on email communications to which Nurse Oja was a party, but that he did not consider Nurse Oja's deposition testimony. Dr. Kelty testified, "what I'm going on is the basis of those email exchanges and what she said in those exchanges. What she says about it now may or may not be relevant to my opinion. It could be, but it also might be – might not be." (Dep. of Dr. Kelty at 61-62.)

### 4. Sanctions

"The Court may impose an appropriate sanction . . . on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).

7

Plaintiffs' counsel's attempt, through a written communication during the deposition, to direct Dr. Kammerer to his response to a prior question constitutes an effort to influence Dr. Kammerer's testimony.  That effort and the related instruction to Dr. Kammerer not to disclose the substance of the communication "impeded and frustrated" the ability of Defendant to conduct an examination of the Dr. Kammerer.  The degree to which, if at all, the failure to produce Dr. Kelty's notes interfered with Defendant's examination of Dr. Kelty, is uncertain given that Defendant did not seek to reopen the deposition after receipt of the notes.[2]  Nevertheless, Defendant's frustration with the inability to review the records during the deposition is reasonable.

While the Court believes sanctions are warranted, because the Court discerns no unfair prejudice to Defendant's substantive arguments in defense of Plaintiffs' claims, the Court will not exclude or limit the expert witnesses' testimony.  The Court concludes that monetary sanctions should operate to deter similar conduct and compensate Defendant for its efforts to address the conduct.  *See Anderson v. Beatrice Foods Co*., 900 F.2d 388, 394 (1st Cir. 1990) ( "Sanctions, under both Rules 11 and 37, serve dual purposes of deterrence and compensation.").

## CONCLUSION

Based on the foregoing analysis, the Court grants in part and denies in part the motion for sanctions.  The Court orders:

---

[2] On January 2, 2024, Plaintiffs' counsel asked Defendant's counsel to advise whether Defendant intended to reconvene Dr. Kelty's deposition.  (Exhibit E to Defendant's Motion for Sanctions at 2.)  The record lacks any evidence that Defendant sought to reconvene the deposition.

8

1. Defendant's request to exclude or limit the scope of the testimony of Drs. Kammerer and Kelty is denied without prejudice to Defendant's ability to challenge the scope of the opinions offered at trial or in connection with a dispositive motion if Defendant believes the designations and deposition testimony did not fairly notify it of the proffered opinions.[3]

2. Plaintiffs shall reimburse Defendant for the reasonable attorney fees and costs Defendant incurred during the conduct of Dr. Kammerer's deposition.

3. Plaintiffs shall reimburse Defendant for the reasonable attorney fees and costs Defendant incurred in prosecuting the motion for sanctions.

---

[3] Defendant also argues that Dr. Kelty's Declaration, filed in response to the motion for sanctions, should be disregarded because in the Declaration, Dr. Kelty testifies to facts that are inconsistent with his deposition testimony. The inconsistencies appear to involve primarily the time when Dr. Kelty might have formed his opinions and the information he reviewed as he formed his opinions. The mere fact that a declaration is inconsistent with deposition testimony does not automatically result in the disregard of the declaration. In the context of summary judgment practice, the First Circuit has observed, "[w]here a party has given 'clear answers to unambiguous questions' in discovery, that party cannot 'create a conflict and resist summary judgment with an affidavit that is clearly contradictory,' unless there is a 'satisfactory explanation of why the testimony has changed.'" *Hernandez-Loring v. Universidad Metropolitana*, 233 F.3d 49, 54 (1st Cir. 2000) (quoting *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4–5 (1st Cir. 1994)). But "lapse of memory, new sources of information or other events can often explain a revision of testimony." *Id.* "[I]n applying this rule, it is critical that there be no 'satisfactory explanation'" before a court disregards a party's affidavit. *Id.* The Court would address the issue of whether Plaintiffs can rely on the information in the Declaration, if raised, either at trial or in connection with dispositive motion practice. If the inconsistencies are material, whether the Court limits Dr. Kelty's testimony to his deposition or permits him to supplement his testimony as set forth in the Declaration would depend at least in part on whether Dr. Kelty provides a "satisfactory explanation" for the differences.

## **NOTICE**

Any objection to this order shall be filed in accordance with Federal Rule of Civil Procedure 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 25th day of April, 2024.